PATTERSON *et al.*, Respondents, v. JUDD, Appellant.

1. A. agreed to deliver to B. at a specified place on the Mississippi river "two rafts of pine logs containing each from 350,000 to 400,000 feet, more or less—one raft to be of the first run in the spring, and the other as soon thereafter as possible (want of sufficient water and dangers of navigation excepted); and in case of a loss of a portion of said rafts the loss to be deducted *pro rata* as per number of logs contained in the whole." A. brought to the place specified a raft containing 419,226 feet; he cut off and delivered to B. 323,385 feet of this raft, B. demanding the whole raft. *Held*, in a suit by B. to recover damages of A. for his refusal to deliver the whole raft, 1st, that B. was not entitled under the contract to demand the whole raft of 419,226 feet, the words "more or less" not covering so great an excess as 19,226 feet; that the delivery of a raft containing any quantity of logs between 350,000 and 400,000 feet would be a legal compliance with the contract; 2d, that it was competent for A. to show that when the raft in question started from his boom in Minnesota, it contained, according to the St. Croix scale and measurement, 486,402 feet of logs, and that 67,176 feet were lost, by reason of want of water and dangers of navigation, in running it to its place of destination.

*Appeal from St. Louis Court of Common Pleas.*

This was an action to recover damages for an alleged breach of the following agreement: "Articles of agreement between Judd, Walker & Co. and Patterson & Ferguson, made and entered into at St. Louis this twenty-first day of January, A. D. 1856, witnesseth, that for and in consideration of the sum of sixteen dollars per thousand feet according to the St. Croix scale and measurement—which scale bill shall exhibit the number of pieces, logs and feet with their original marks—payable one-third in cash, one-third in their negotiable note at three months, and one-third in their negotiable note at five months from delivery—Judd, Walker & Co. agree to deliver to the aforesaid Patterson & Ferguson, in the eddy at or above Bremen, two rafts of pine logs containing each from 350 to 400 M feet, more or less—one raft to be of the first run in the spring, and the other as soon thereafter as possible (want of sufficient water and dangers of navigation excepted)—as large a portion of said sticks to

be eighteen feet or more in length as can be conveniently got in rafting from boom; and in case of loss of a portion of said rafts, the loss to be deducted *pro rata* as per number of logs contained in the whole; and the said Patterson & Ferguson are to pay the discount on the first notes of three months. [Signed] Patterson & Ferguson (seal), Judd, Walker & Co. (seal)."

The plaintiffs alleged that in the month of November, 1856, a raft of pine logs containing 419,226 feet, belonging to Judd, Walker & Co., and of the first run in the spring of that year, arrived in the eddy at or above Bremen; that of this raft said Judd, Walker & Co. cut off and delivered to plaintiffs only 323,385 feet, refusing, although plaintiffs demanded the whole of said raft, to deliver more than said amount.

The defendant in his answer admitted the execution of the above contract; and averred that, during the first run in the spring of 1856, he started from his boom in Minnesota a raft of pine logs for the plaintiffs according to the terms of the contract, but that by reason of want of water and dangers of navigation this raft did not reach Bremen that year; that during the same first run in 1856 he started from his boom another raft of pine logs to be run to Bremen, which was a larger raft than the plaintiffs by the contract were entitled to and was not intended for them, and containing by the St. Croix scale 486,402 feet; that this is the *same raft* mentioned in the petition; that it arrived at Bremen in November, 1856, but had lost in navigation 67,176 feet of logs, so that when it reached Bremen it contained 419,226 feet; that from this raft, as by the original scale bill, he delivered to tain plaintiffs a raft, for the first raft under said contract, con- ing 375,204 feet; that the *pro rata* of the whole loss in navigation as per number of logs contained in the whole raft chargeable upon the quantity so delivered to the plaintiffs was 51,819 feet, which share of the whole loss defendant deducted from the raft so delivered, as he was entitled to do by the terms of the contract; wherefore the said raft deliv-

ered was reduced to 323,385 feet; that the raft delivered was fully equal to the requirements of the contract.

At the trial the defendant offered to prove the facts as set up in this answer. The court ruled out the testimony as incompetent, and instructed the jury as follows: " The defendants were bound under their contract to deliver to the plaintiffs the whole of the logs contained in the raft which arrived at Bremen."

*A. N. Crane*, for appellant.

I. The court erred in refusing to admit evidence to prove the size of the raft when it started and the loss of logs sustained in running it to Bremen. The plain intent of the parties to the contract was that as many logs should be started as plaintiffs were by the contract entitled to; but if unavoidable loss occurred in running them, this loss should be considered in estimating the quantity delivered. By distributing the loss *pro rata*, we have, for the amount delivered under the contract, 375,204 feet, which is as many feet of logs as the contract entitled the plaintiffs to for one raft.

II. The instruction given to the jury was erroneous. The contract should be construed precisely as if the words "more or less" did not occur in it; for the manifest intention of the parties, by using the two numbers, was to give the words "from" and "to" the sense of *between*, and thus to fix the size of the raft *between* 350,000 and 400,000 feet; if the words "more or less" conflict with the intention so manifested, or are in any sense opposed to the definite clause, they must give way and be rejected. The subject matter of the contract is not a particular raft but a number of feet of logs. The parties buy and sell by the thousand feet and not by the raft. The raft in question had no existence until long after the contract was made. This particular raft was not contemplated by the parties; indeed no particular raft was. The rafts might have been run in whatever size the condition of the river made necessary. A large raft might be divided into several small ones, or several smaller rafts might be united into one

large raft.  If the words "more or less" should not be rejected, they should be applied distributively so as to make the clause as to quantity read : " Containing each *from* 350,000 feet or *more*, to 400,000 feet *or less*."   At most, plaintiffs were not entitled to more than 400,000 feet of the raft that arrived at Bremen.  The words "more or less" would not cover so great an excess as 19,226 feet.  (See Deisborough v. Nelson, 3 Johns. Cas. 81; White v. Tancray, 9 Leigh, 947; Small v. Quincy, 4 Greenl. 497 ; Blaney v. Rice, 20 Pick. 62; Cross v. Eglin, 2 Barn. & Adol. 106.)

*S. T. & A. D. Glover*, for respondents.

I.  The plaintiffs were entitled to the whole raft that reached Bremen.  If this raft had contained 900,000 feet, plaintiffs would have been entitled to the whole of it.   If it had reached Bremen with only 50,000 feet, plaintiffs could have demanded no more.   The attempt to show that a raft containing 375,204 feet was delivered by distributing a "*pro rata*" loss, is futile.  The expression "*pro rata*" does not apply to one raft at all.  If it has any meaning in the connection in which it is used, it must refer to the two rafts. The instruction given was correct.

Scott, Judge, delivered the opinion of the court.

The court, in rejecting the evidence offered by the defendant, seems to have discarded from its consideration that part of the contract in which it is provided that " in cases of loss of a portion of said rafts, the loss to be deducted *pro rata* as per number of logs contained in the whole."   The evidence, if admitted, might have thrown some light on this clause, which it must be admitted is rather obscure.  The defendant, having agreed to deliver some logs at a fixed price, may have preferred to risk the market price for others, and would therefore send out a larger raft than would fill his contract with the plaintiffs.  If this raft was lessened in bringing it to market, then the loss would be deducted rata-

bly from the portion reserved or intended for the defendant and the portion to which the plaintiff would oe entitled. We see no other way of interpreting the contract. The construction contended for by the plaintiffs, that the intention of the parties was that any loss that might happen in bringing down the rafts was to be divided ratably between the *two* rafts, effects nothing. What object is obtained by dividing the loss between the two rafts so far as either the plaintiffs or defendant are concerned? If both rafts were to be received notwithstanding any diminution they might sustain, where was the motive to any such clause in the contract? In the absence of the evidence offered by the defendant, any interpretation we may put upon the contract must be more or less conjectural, and the evidence, when received, may show that in this matter we are in error.

In construing this contract, we see no reason for departing from the usual signification of the words " more or less," because the rafts are described as containing each from 350 to 400,000 *feet, more or less.* These terms apply to the two extremes, although their force is necessarily modified by the circumstance that any quantity of logs between 350 and 400,000 feet would be a legal compliance with the contract. These words would ordinarily cover a small excess or deficiency proportioned to the amount named, so that the parties would not be subjected to the inconvenience of a small excess in complying, or a small deficiency in not complying, with a contract, by leaving the excess on the hands of the vendor in the one event, or refusing to take the amount offered by reason of the deficiency on the other. The term " more" would not compel a party to take an indefinite quantity, nor would the term " less" force him to take a quantity bearing no proportion to that stipulated. (Cross v. Eglin, 2 Barn. & Adol. 106.) In my opinion, nineteen thousand feet is a greater excess than the plaintiffs would have been bound to take; consequently, the defendant was not bound to deliver that quantity.

It will be observed that the evidence offered by the defen-

dant and rejected by the court was called for by an express reference to it in the contract.

Reversed and remanded. Napton, Judge, concurs in reversing the judgment; Richardson, Judge, not sitting, having been of counsel.